IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 2:18-cr-00245

COURTNEY EDWARD DALTON,

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Courtney Dalton's Motion for Compassionate Release. [ECF No. 64]. The court in deciding such motions will consider the following: whether the defendant has exhausted his or her administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and the § 3553(a) factors. In deciding what constitutes "extraordinary and compelling reasons" for release by reason of COVID-19, a defendant must demonstrate that he or she has a medical condition listed by the Centers for Disease Control and Prevention as causing an increased risk of severe illness from COVID-19 and that he or she is at a facility which cannot effectively prevent the spread of the virus.

I. Background

On November 26, 2018, Mr. Dalton pled guilty to possession with intent to distribute a quantity of methamphetamine in violation of 21 U.S.C. § 841(a)(1), as alleged in Count One of an Information and possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. 924(c)(1)(A), as alleged in Count Two of an Information. [ECF No. 32]. On July 31, 2019, I sentenced Mr. Dalton to 24 months in

prison on Count One and 60 months in prison on Count Two, to be served consecutively for a total of 84 months in prison. [ECF No. 48]. I further sentenced him to a term of 5 years of supervised release to follow his term of imprisonment. *Id.* Mr. Dalton is currently serving his sentence at the Camp at Federal Correctional Institution Ashland ("the Camp") in Kentucky. *See* [ECF No. 64]. On June 12, 2020, Mr. Dalton petitioned this court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [ECF No. 42]. I denied that Motion because Mr. Dalton had not yet exhausted his administrative remedies. [ECF No. 63]. Mr. Dalton petitioned for compassionate release again on September 2, 2020. [ECF No. 64]. The Government has responded [ECF No. 66], Mr. Dalton has replied [ECF No. 67], and this Motion is ripe for decision.

II. Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. Dalton's sentence under compassionate release, I must find that Mr. Dalton has exhausted his administrative remedies, has demonstrated

"extraordinary and compelling reasons," is not a danger to the safety of others, and find that his release is consistent with § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018). As I will explain, to find "extraordinary and compelling reasons" exist by reason of COVID-19, Mr. Dalton must demonstrate that he has a medical condition listed by the Centers for Disease Control and Prevention ("CDC") as causing an increased risk of severe illness from COVID-19 and that he is at a facility which cannot effectively prevent the spread of the virus.

a) **Exhaustion of Administrative Remedies and Section 3582(c)(1)(A)**

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). But before they make such requests, defendants must ask BOP to do so on their behalf and then wait 30 days. *See* § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after BOP denies the request or thirty days have elapsed since the request was filed), a court "may reduce the term of imprisonment . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).

Mr. Dalton wrote to the warden at the Camp on July 6, 2020. [ECF No. 64, at 3]. The warden denied this request on July 23, 2020. [ECF No. 64, at 4]. Because more than thirty days have passed since Mr. Dalton sent his request to the warden, I find that Mr. Dalton has exhausted his administrative remedies. I now turn to whether Mr. Dalton has alleged extraordinary and compelling reasons that would justify compassionate release.

3

b) **Extraordinary and Compelling Reasons**

Once an inmate has satisfied administrative exhaustion, courts may reduce their sentences upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[1] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). But many courts have found "extraordinary and compelling" reasons "supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19."[2] *See e.g.*, *Bass*, 2020 WL 2831851, at *7 (citing *e.g.*, *Rodriguez*, 2020 WL 1627331, at *9 (finding an "extraordinary and compelling reason" on the basis of the

---

[1] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by the BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

[2] "Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release," which has not been updated since the passage of the First Step Act. *See Bass*, 2020 WL 2831851, at *3; U.S.S.G. § 1B1.13.2 Thus, courts have taken this to mean that "there does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *See e.g., United States v. Redd*, No. 1:97-cr-00006-AJT, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Brant*, No. 218CR20155TGBMKM1, 2020 WL 2850034, at *4 (E.D. Mich. June 2, 2020); *United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *3 (C.D. Ill. May 15, 2020).

inmate's diabetes, high blood pressure, and liver abnormalities, the outbreak at FCI Elkton, and the short period remaining on his sentence); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury). I previously granted compassionate release to a defendant who was immunocompromised—suffering from a liver disease, Hepatitis C. *See United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *6 (S.D. W. Va. June 12, 2020); *see also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 9, 2020) (listing "immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19").

In addition, many courts rely upon CDC guidance for whether a medical condition constitutes an "extraordinary and compelling" reason for release. *See e.g., United States v. Salvagno*, No. 5:02-CR-51 (LEK), 2020 WL 3410601, at *4 (N.D.N.Y. Apr. 23, 2020), reconsideration denied (June 22, 2020) ("The Centers for Disease Control and Prevention has advised that people with hypertension face an increased risk of severe illness from COVID-19."); *United States v. Nygren*, No. 1:16-CR-00106-JAW, 2020 WL 4208926, at *12 (D. Me. July 22, 2020) ("Based on the medical records in this case and the CDC guidance . . . ."); *United States v. Bell*, No. 18-CR-60115-BB-4, 2020 WL 4217724, at *4 (S.D. Fla. July 23, 2020) ("CDC guidance indicates that individuals with the following health conditions are at a higher risk of contracting severe illness due to COVID-19 . . . ."). And many courts reject

5

compassionate release petitions when the defendant does not suffer from any conditions recognized by CDC as causing an increased risk of severe illness from COVID-19. *See e.g.*, *United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *19 (E.D. Pa. July 6, 2020) ("Mr. Adeyemi's asthma does not currently fit the Centers for Disease Control and Prevention's high-risk category."); *United States v. Mollica*, No. 2:14-CR-329-KOB, 2020 WL 2811504, at *3 (N.D. Ala. May 29, 2020) ("Ms. Mollica is under 65 and the CDC has not listed the underlying conditions from which she suffers as creating particular risk for COVID-19."); *United States v. Arroyo*, No. 2:19-CR-54-1-TLS-JPK, 2020 WL 3118787, at *4 (N.D. Ind. June 12, 2020) ("High cholesterol is not listed on the CDC website as a risk factor related to COVID-19 . . . ."); *United States v. Cosby*, No. 18CR4474-JAH, 2020 WL 3840567, at *4 (S.D. Cal. July 7, 2020) ("CDC has not listed epileptic seizures as a condition that places individuals at a higher risk of severe illness."); *United States v. Frazer*, No. CR 19-110, 2020 WL 2404893, at *2 (E.D. Pa. May 12, 2020) ("Sleep apnea is not listed by the CDC as a serious underlying medical condition that could increase a person's risk for severe illness from COVID-19.").

I join other courts in holding that I cannot find that "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him or her more at risk for developing a serious illness from COVID-19 *and* the facility where the inmate is housed has conditions such that its inmates are at a high risk of contracting COVID-19. *See United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently

justify compassionate release . . . ."); *United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of the virus, even in the detention setting, does not translate to the release of a person accused.").

In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 9, 2020). Using CDC guidance will allow for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release.

If an inmate can demonstrate that he or she has a condition identified by CDC, next, the defendant must show that his or her prison conditions are such that BOP cannot effectively prevent the spread of COVID-19. Factors include but are not limited to the steps BOP has taken to stop the spread of COVID-19 in that particular prison and steps to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, and the number of COVID-19 cases in that prison.

I will note that Attorney General William Barr has twice issued memoranda directing BOP to prioritize the use of home confinement for vulnerable inmates. *See Memorandum for Director of BOP*, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last visited Sept. 13, 2020) and https://www.justice.gov/file/1262731/download (last visited Sept. 13, 2020). Yet, by all accounts, BOP has resisted calls to release

vulnerable inmates to home confinement. Indeed, other district courts have noted their awareness "of the growing evidence of the BOP's chronic mismanagement of its vulnerable population during the COVID-19 pandemic." *Woodard v. United States*, No. 2:12-CR-105, 2020 WL 3528413, at *3 (E.D. Va. June 26, 2020); *see also Wilson v. Williams*, 4:20-cv-00794, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the "unacceptable" percentage of positive tests at FCI Elkton and BOP's "ineffective[ness] ... at stopping the spread"). "Even in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (the likelihood of contracting the virus is greater in prison than if a defendant were able to fully self-isolated at home); *see also See United States v. Stephens*, 447 F.Supp.3d 63, 65, (S.D.N.Y. Mar. 19, 2020) (discussing the heightened risk presented by a COVID-19 outbreak in a jail or prison versus the community at large). Thus, when looking at whether an inmate is at a prison with a high risk of contracting COVID-19, it is also imperative to recognize the context and failures of BOP to stop the spread of COVID-19 in prisons.

Mr. Dalton has alleged two health conditions that he believes put him at a higher risk of serious complications should he contract COVID-19: an immunocompromised state because he does not have a spleen and Hepatitis C. [ECF No. 64, at 1–2]. In its response, the Government contends that Mr. Dalton's records indicate that his lack of spleen and one positive Hepatitis C test do not necessarily

8

mean that he is immunocompromised or at a higher risk for serious complications from COVID-19. [ECF No. 66, at 14–15]. However, because Mr. Dalton has not alleged conditions at the Camp that put him at a higher risk for contracting COVID-19, I need not decide whether Mr. Dalton is at a higher risk for serious complications should he contract COVID-19.

In its response, the Government notes that Mr. Dalton did not allege specifics about the Camp that put him at a higher risk for contracting COVID-19. [ECF No. 66, at 13]. While Mr. Dalton does somewhat remedy this in his reply [ECF No. 67], I still cannot find that he has alleged conditions that put him at an increased risk for contracting COVID-19 as compared to other prisoners at FCI Ashland or other BOP facilities. He even alleges that there have been no documented cases of COVID-19 at the Camp and no testing done for COVID-19.

The number of active and recovered cases reported by BOP for FCI Ashland include both the FCI and the Camp. While the numbers are not broken down between the two, there is no support for Mr. Dalton's theory that BOP does not want to report cases at the Camp to keep the overall numbers low considering that BOP continues to report active and recovered cases at FCI Ashland. By Ashland's own reports, there is currently one active case among prisoners, one active case among staff, seven inmates who have recovered from COVID-19, and four staff who have recovered from COVID-19. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Nov. 9, 2020).

There are over 1,000 prisoners at Ashland, and while a single active case is, of course, cause for concern, it does not necessarily indicate a lack of effort on the part

9

of the BOP. Generalized fears about contracting COVID-19 are not sufficient to support a finding of extraordinary and compelling reasons. At this time, I cannot find that Mr. Dalton is experiencing conditions that put him at a higher risk of contracting COVID-19 to the point that they are extraordinary and compelling reasons. Therefore, I must deny his Motion.

### III. Conclusion

For the foregoing reasons, Mr. Dalton's motion for compassionate release [ECF No. 64] is **DENIED without prejudice.** The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

    Enter:    November 9, 2020

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE